**Keith Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email: ndahab@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600

**Mathew W. dos Santos**, OSB No. 155766
Email: mdossantos@aclu-or.org
**Kelly K. Simon**, OSB No. 154213
Email: ksimon@aclu-or.org
ACLU FOUNDATION OF OREGON, INC.
PO Box 40585
Portland, OR 97240
Telephone: (503) 227-3186

Attorneys for Plaintiffs-Petitioners

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| INNOVATION LAW LAB and LUIS JAVIER SANCHEZ GONZALEZ by XOCHITL RAMOS VALENCIA as next friend, | Case No. 3:18-cv-01098 |
| Plaintiffs-Petitioners, | **COMPLAINT** |
| v. | |
| KIRSTJEN NIELSEN, Secretary, Department of Homeland Security, THOMAS HOMAN, Acting Director, Immigration and Customs Enforcement, ELIZABETH GODFREY, Acting Field Office Director, Seattle Field Office of ICE, JEFFERSON BEAUREGARD SESSIONS, III, U.S. Attorney General, HUGH J. HURWITZ, Acting Director, Federal Bureau of Prisons, JOSIAS SALAZAR, Warden, FCI Sheridan Medium Security Prison, in their official capacity only, | |
| Defendants-Respondents. | |

## INTRODUCTION

1.      The federal government is currently imprisoning more than one hundred individuals, with little to no way of meaningfully communicating with family members and immigration attorneys, at the Federal Correctional Institution, Sheridan, a medium security prison in Sheridan, Oregon (the Sheridan prison). Beginning sometime on or around June 8, 2018, the government transferred these individuals—who are being detained under color of the immigration laws—to the Sheridan from other parts of the country. The federal government has repeatedly refused to allow immigration attorneys to visit or contact the detainees or, it appears, permit the detainees to contact an attorney.

2.      Because the federal government has denied all meaningful attorney access to immigration detainees at the Sheridan prison, these immigrants may face summary deportation without much-needed legal assistance. In addition, detainees may have no way to contact their children and other family members from whom they have been forcibly separated as result of the federal government's newly-instituted "zero-tolerance" policies.

3.      The federal government's unlawful denial of attorney access to imprisoned immigrants at the Sheridan prison contravenes our most basic values. "There is a well established tradition against holding prisoners incommunicado in the United States. It would be hard to find an American who thought people could be picked up by a policeman and held incommunicado, without the opportunity to let anyone know where they were, and without the opportunity for anyone on the outside looking for them to confirm where they were." *Halvorsen v. Baird*, 146 F.3d 680, 688–89 (9th Cir. 1998).

4.      Fundamental principles of constitutional law forbid the government from holding prisoners without permitting them an opportunity to communicate with attorneys. In addition, the

PAGE 1 -   **COMPLAINT**

federal government's standard operating rules governing individuals imprisoned for immigration proceedings also forbid the government from barring attorneys at the prison's doors when they seek to represent their clients or provide legal assistance.

## PARTIES

5.      Plaintiff-Petitioner Innovation Law Lab (the Law Lab) is a nonprofit organization that works to improve the rights of noncitizens throughout the United States.  The Law Lab seeks to provide "Know Your Rights" trainings to immigration detainees at the Sheridan prison covering the immigration system and detainees' rights. In addition, through its pro bono representation program, the Law Lab seeks to provide representation to every unrepresented detainee at the Sheridan prison who requests representation. Pro bono attorneys from the Law Lab's pro bono program have been turned away from the Sheridan prison when they attempted to visit immigrants at the facility and, despite following the prescribed procedures for visitation, have not been admitted to visit the facility or any of the immigrant detainees for individualized consultations regarding the detainees pending immigration proceedings.

6.      Plaintiff-Petitioner Luis Javier Sanchez Gonzalez (Sanchez Gonzalez), by his partner Xochitl Ramos Valencia as next friend, is being held under federal immigration laws at the Sheridan prison.  Sanchez Gonzalez, through Ms. Valencia, has requested representation by Innovation Law Lab for his immigration proceeding and has been denied access to his attorney.

7.      Defendant-Respondent Kirstjen Nielsen is the Secretary of the U.S. Department of Homeland Security (DHS), an agency of the United States. Secretary Nielsen is ultimately responsible for the actions of Immigration and Customs Enforcement and Customs and Border Protection. She is the legal custodian of immigration detainees incarcerated at the Sheridan prison. She is named in her official capacity.

PAGE 2 -   **COMPLAINT**

8.      Defendant-Respondent Thomas Homan is the Acting Director of U.S. Immigration and Customs Enforcement (ICE), a component of DHS. ICE is responsible for apprehension, detention, and removal of noncitizens from the United States. He is the legal custodian of immigration detainees incarcerated at the Sheridan prison. Director Homan is named in his official capacity.

9.      Defendant-Respondent Elizabeth Godfrey is the Acting Field Office Director for the Seattle Field Office of ICE. Director Godfrey is responsible for the enforcement of the immigration laws within this district, and for ensuring that ICE officials follow the agency's policies and procedures. She is the legal custodian of immigration detainees incarcerated at the Sheridan prison. She is named in her official capacity.

10.     Defendant-Respondent Jefferson Beauregard Sessions III is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ). The Attorney General is ultimately responsible for the actions of the Federal Bureau of Prisons (BOP). He is the legal custodian of immigration detainees incarcerated at the Sheridan prison. He is named in his official capacity.

11.     Defendant-Respondent Hugh J. Hurwitz is the Acting Director of the Federal Bureau of Prisons.  He is the legal custodian of immigration detainees incarcerated at the Sheridan prison.  He is named in his official capacity.

12.     Defendant-Respondent Josias Salazar is the Warden of FCI Sheridan, a federal prison in Sheridan, Oregon. He is the legal custodian of immigration detainees incarcerated at the Sheridan prison.  He is named in his official capacity.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## JURISDICTION AND VENUE

13.     Jurisdiction is proper under 28 U.S.C. §§ 1331, 1361, 1651, 2241; the Suspension Clause, U.S. Const. art. I, § 2; and 5 U.S.C. § 702.

14.     Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 706, 28 U.S.C. § 2241, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. A substantial, actual, and continuing controversy exists between the parties.

15.     The federal government has waived its sovereign immunity for suits seeking injunctive relief against constitutional violations. 5 U.S.C. § 702. *Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989).

16.     Venue is proper in the District of Oregon under 28 U.S.C. § 1391 because at least one federal Defendant is in this District, Plaintiff Sanchez Gonzales is detained in this District, Plaintiff Law Lab resides in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. Venue is proper under 28 U.S.C. 2243 because the warden of the facility at issue resides in this district.

## FACTUAL ALLEGATIONS

17.     The Sheridan prison is a "medium security federal correctional institution" that typically houses prisoners serving sentences for criminal convictions.[1]

18.     The federal government recently announced that it would incarcerate individuals in civil immigration proceedings at the Sheridan prison. ICE officials indicated that they intend to incarcerate approximately 130 noncitizens at the prison. Officials claim that the additional detention space is needed because of the federal government's recently instituted "zero-tolerance" policies, under which the government intends to prosecute all misdemeanor illegal

---

[1] https://www.bop.gov/locations/institutions/she/.

PAGE 4 -   **COMPLAINT**

entry violations and to forcibly separate noncitizens subject to prosecution from their children and other family members.[2]

19.    In early June, 2018, the federal government began transferring noncitizens to the Sheridan prison from other parts of the country. On information and belief, more than one hundred noncitizens are currently incarcerated at the Sheridan prison pending immigration proceedings.

20.    A substantial number of the Sheridan detainees were likely apprehended at or near the border and are seeking protection under the asylum laws. They are incarcerated pending an initial screening known as a "credible fear" interview or "reasonable fear" interview and, if found to have such a fear, pending immigration court proceedings. *See* 8 U.S.C. § 1225(b)(1); 8 C.F.R. § 208.31. On information and belief, Plaintiff Sanchez Gonzalez is one such individual.

21.    Other detainees at the Sheridan prison were likely apprehended in the interior of the country and are incarcerated pending immigration court proceedings at which they can litigate defenses to removal or request relief from removal under the immigration laws.

22.    On information and belief, the immigration detainees at the Sheridan prison were incarcerated in May 2018 and transferred to Sheridan prison on or around June 8, 2018.

23.    Since they were first incarcerated in the Sheridan prison, immigration detainees at the prison have been denied the ability to meaningfully visit, consult with, or contact an immigration attorney. In turn, pro bono attorneys seeking to meet with their clients at the Sheridan prison or to meet and screen immigrants for potential legal representation have been repeatedly and persistently denied access to the Sheridan prison.

---

[2] *See* Sarah N. Lynch, *U.S. sending 1,600 immigration detainees to federal prisons*, Reuters, June 7, 2018, https://www.reuters.com/article/us-usa-immigration-prisons-exclusive/exclusive-u-s-immigration-authorities-sending-1600-detainees-to-federal-prisons-idUSKCN1J32W1.

PAGE 5 -    **COMPLAINT**

24.     Neither ICE nor the BOP appears to have any process or policy for attorney visitation or communication to be followed for immigration detainees in Sheridan prison, and as a result, the government has repeatedly and persistently obstructed access to immigration detainees at Sheridan prison and have functionally denied all meaningful access to counsel.

**The Innovation Law Lab Denied Meaningful Access to Conduct Screening Interviews.**

25.     Pro Bono Attorneys from the Law Lab's pro bono program have been denied access to Sheridan prison.

26.     The Law Lab is a nonprofit organization that works to improve the rights of noncitizens in the United States.

27.     The Law Lab directs the pro bono project at many places around the United States, including the former detention center in Artesia, New Mexico where, in collaboration with a large pro bono network, every woman and child detained had access to representation. The Law Lab initiated the pro bono project at the South Texas Family Residential Center where every woman and children detained has access to representation. The Law Lab has directed pro bono representation projects in states across the United States including Georgia, Kansas, Missouri, North Carolina, and Oregon. The Law Lab is a collaborating organization with the Southern Poverty Law Center's Southeast Immigrant Freedom Initiative that provides pro bono lawyers at several immigrant detention centers in Georgia and Louisiana.

28.     Under well-established policies at immigration detention facilities, pro bono attorneys may request an attorney consultation by visiting the detention facility and requesting access.  Under well-established policies, no prior notice or clearance is required for an attorney visit.  Most of these policies have been consolidated into a set of immigration detention standards

PAGE 6 -   **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

called the ICE 2011 Performance-Based Detention Standards.[3] These Detention Standards were last issued in 2011 and revised in December 2016.

29.    On June 8, 2018, the Law Lab, through its Executive Director, Stephen W. Manning, learned that the immigration authorities, through Defendants, were detaining over one hundred immigrant men at the Sheridan prison.  Based on that information, the Law Lab decided to provide pro bono legal representation, through its volunteer attorneys, to every man in the Sheridan immigrant cohort.

30.    To provide constitutionally adequate legal representation to the immigrant detainees at the Sheridan prison, the Law Lab decided, through Manning and based on Manning's experience designing legal representation projects and representing individuals in immigration proceedings, that each individual at the Sheridan prison needed at least three attorney contacts: (a) a know-your-rights group orientation providing an overview of the immigration system and relief available, (b) an individualized screening with a trained advocate, and (c) an individualized client conference.  After those contacts, depending on the case, the noncitizen may also need legal assistance preparing for fear interviews, immigration court hearings, release applications, among other potential elements of the individual's unique case. The most critical element of meaningful representation in immigration cases, however, is the individualized client conference.

31.    On June 8, 2018, to facilitate access to the immigrant detainees at the Sheridan prison, Plaintiff Law Lab, through Manning, wrote a letter to the FCI Sheridan Warden, Josias Salazar, and the Acting Field Office Director for Immigration and Customs Enforcement for Oregon, Elizabeth Godfrey.  In the letter, Manning requested that ICE provide access to the

---

[3] ICE Performance-Based Detention Standards 2011 ("Detention Standards"), *available at* https://www.ice.gov/detention-standards/2011.

PAGE 7 -   **COMPLAINT**

Sheridan detainees for know-your-rights presentations, providing written notice to the detainees that the Law Lab's pro bono attorneys are available to them, permit the detainees to call the Law Lab's pro bono attorney hotline, and refrain from removing any immigrant detainee before warning them of their legal rights.

32.      As of the date of this Complaint, none of the requests that the Law Lab made in its June 8, 2018, letter has been granted.

33.      On June 12, 2018, the Law Lab sent another letter to the Warden and Ms. Godfrey.  In its second letter, the Law Lab, through Manning, provided to the Warden and Ms. Godfrey a list of approximately 100 noncitizens who the Law Lab believed to be detained in the Sheridan prison, and requested meaningful access on an individual basis to speak with them about their legal rights.  The Law Lab also assured ICE that it intended to provide pro bono legal representation to every individual detained under civil immigration process at the Sheridan prison.  Finally, the Law Lab requested assurances from ICE that no deportations would occur without first providing the immigrant detainee access to individualized legal counsel.

34.      As of the date of this Complaint, ICE has declined provide the Law Lab with the assurances it requested in its June 12, 2018, letter.

35.      On June 15, 2018, after Law Lab attorneys had been denied access to visit and communicate with immigrant detainees in the Sheridan prison, the Law Lab, through Manning spoke with Chad Allen, ICE Supervisory Detention and Deportation Officer, about the denial of access to counsel.  Officer Allen told the Law Lab that attorney visitation would very limited—a single room, for three hours a day, Monday through Friday.  Officer Allen explained that immigration law library materials would be made available, and that ICE would provide an "ABA Know Your Rights" video.  The Law Lab, though Manning, explained to Officer Allen

**PAGE 8 -   COMPLAINT**

that the attorney visitations he proposed would not suffice to provide meaningful and constitutionally adequate access to counsel to the 123 immigrant detainees at the Sheridan prison.

36.    Despite the Law Lab's repeated requests, through Manning and through other pro bono attorneys, Defendants repeatedly have denied meaningful access to the immigrant detainees in the Sheridan prison.

37.    On June 18, 2018, the Law Lab, through Manning, spoke and communicated via e-mail with Corey Heaton, ICE's Assistant Field Office Director in Portland.  Manning explained to Director Heaton the model the Law Lab had established for providing pro bono legal representation to the detainees in the Sheridan prison.  He explained that adequate representation must include individual client conferences in the days and weeks after the detainees participated in a know-your-rights presentation.  Manning emphasized the importance of access to telephones, in-person meetings, and law library resources, all of which are required under ICE's Performance-Based National Detention Standards and the U.S. Constitution.

38.    As of the date of this Complaint, Defendants have failed to provide any mechanism through which immigrant detainees in the Sheridan prison can meaningful access pro bono legal representation.  Indeed, only one attorney has been able to meet with a client, and that meeting was limited a one-hour preliminary consultation.  The client was subsequently transferred to the North West Detention Center in Tacoma, Washington.

**Attorney Philip Smith Denied Access to His Client, J-V-F-.**

39.    Philip Smith is an attorney duly licensed in the state of Oregon and an immigration law specialist.

PAGE 9 -   **COMPLAINT**

40.     On Friday, June 8, 2018, the Law Lab received a request for pro bono legal assistance for a civil immigration detainee detained at the Bureau of Prisons Federal Correctional Institution of Sheridan, Oregon. Mr. Smith agreed to undertake the initial screening and investigation.

41.     On June 9, 2018, Mr. Smith called the Sheridan prison to inform them he was an attorney and that he needed to meet with an immigration detainee. He was informed that normally attorney visits were permitted seven days a week and that one could be arranged through a counselor. He provided all the required information and followed all the proper procedures in arranging the attorney visit.

42.     Mr. Smith provided the civil detainee's name, BOP registration number, and Department of Homeland Security registration number (A number).

43.     It was Mr. Smith's intention to meet only with the individual detainee, explain to him the immigration process, identify potential immigration options, and offer him pro bono representation if he wanted to apply to remain lawfully in the United States.

44.     On Sunday, June 10, 2018, Mr. Smith drove one and one-half hours from Portland, Oregon to the prison in Sheridan, Oregon.

45.     On arriving at the Sheridan prison, Mr. Smith properly and correctly identified himself, the purpose of his visit as an immigration attorney, and provided the officer with the information for the individual detainee. The guards and attendants at the prison advised him that attorneys were not permitted to meet with immigration detainees on the weekend, appointments were required to use the attorney visitation rooms, appointments could only be scheduled for weekdays, and he was denied access.

PAGE 10 -  **COMPLAINT**

**Attorney Luis Garcia Denied Access to Clients**

46.    Luis Garcia is an attorney licensed to practice in the State of Oregon.

47.    On Thursday, June 14, 2018, Mr. Garcia visited the Sheridan prison as part of a delegation from the Mexican Consulate.  During the visit, he was able to speak with five Mexican nationals, each of whom had been detained at the border and had requested asylum.

48.    Mr. Garcia was informed by the individuals that none had contacted or had been able to contact legal counsel, and only two had any contact with their families.  Mr. Garcia learned that two of the men had arrived at the border but immediately were separated from their families once they were detained.  At the time of Mr. Garcia's meeting, four of the men were in need of urgent medical care but had not received any treatment.  All of the men stated that they wanted pro bono legal representation.

49.    On Friday, June 15, Mr. Garcia, with his colleagues, visited the Sheridan prison again with the intent to meet with individual detainees.  While Mr. Garcia was en route the prison for the meetings, he was informed that his access would be denied.  He was also informed that he could not have access over the weekend.

50.    On Monday, June 18, Mr. Garcia, again with his colleagues, visited the Sheridan prison for pre-arranged meetings with individual detainees.  Again on Monday, while Mr. Garcia was en route to the prison for the meetings, he was informed that his access would be denied.

51.    As of the date of this Complaint, Mr. Garcia has not been granted access to provide any meaningful legal representation to any immigrant detainee in the Sheridan prison.

**Attorney Chanpone Sinlapasai Denied Access to Clients**

52.    Chanpone Sinlapasai is an attorney licensed to practice in the State of Oregon.

PAGE 11 -  **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

53.     On Friday, June 15, Ms. Sinlapasai, with her colleagues, visited the Sheridan prison again with the intent to meet with individual detainees.  That meeting had been arranged ahead of time and were approved by ICE.  While Ms. Sinlapasai was en route the prison for the meetings, she was informed that her access would be denied.  She was also informed that she could not have access over the weekend.

54.     On Monday, June 18, Ms. Sinlapasai spoke personally with ICE, during which conversation she was assured that she would be provided access to visit with immigrant detainees later that day.  Again that day, while she was en route to the prison for the prearranged meetings, she was informed by ICE that her access would be denied.

55.     On Wednesday, June 20, Ms. Sinlapasai was assured by ICE's Acting Field Office Director Elizabeth Godfrey that Ms. Sinlapasai and her colleagues would be able to provide know-your-rights training to the Sheridan prison detainees on June 21, 2018.  On June 21, 2018, the legal team was denied access when they arrived to provide the training.

56.     As of the date of this Complaint, Ms. Sinlapasai has not been granted access to provide any meaningful legal representation to any immigrant detainee in the Sheridan prison.

**Attorney Leland Baxter-Neal, Attorney Chelsea Strautman, and Paralegal Ian Philabaum Denied Access to Clients**

57.     Leland Baxter-Neal is an attorney licensed to practice in the State of Oregon.

58.     Chelsea Strautman is an attorney licensed to practice in the State of Colorado whose practice in Oregon is limited to federal immigration law.

59.     Ian Philabaum is the program director and paralegal for Innovation Law Lab.

60.     On Monday, June 18, Baxter-Neal, and Philabaum drove to Sheridan from Portland to meet with individual immigration detainees.  The visitation was previously

PAGE 12 -  **COMPLAINT**

authorized by ICE. Shortly after arriving in the town of Sheridan, they were informed that they

would not be allowed to enter the Sheridan prison to meet with any detainees.

61.     On Thursday, June 21, Baxter-Neal, Philabaum, and Strautman drove to Sheridan

to meet with individual immigration detainees at the Sheridan prison. The visit had been

previously authorized by ICE. When they arrived at the gates of the prison, they were stopped

and, after providing their names and information and explaining the purpose of their visit and

providing the name of the ICE officer who had authorized the visit, they were told by a Bureau

of Prisons official that they would not be allowed to enter the prison.  Later in the day on June

21, Philabaum returned to the Sheridan prison with colleagues to help provide a previously

approved know-your-rights presentation to specific detainees who had requested such a

presentation. Philabaum and his colleagues were again stopped at the gates to the Sheridan

prison and told that no one was to be allowed to enter for the purpose of visiting the immigration

detainees. The Bureau of Prisons official at the gate told Philabaum that no visits would be

allowed until the following Monday, at the earliest.

**Defendants Have Provided No Mechanism for Meaningful Access to Counsel**

62.     As of the date of this Complaint, Defendants have failed to provide any

meaningful access to the legal assistance to which the Sheridan detainees are constitutionally

guaranteed.  To date, Defendants have denied all requests by the Law Lab or its attorneys to visit

or communicate with individual detainees.  Despite repeated requests by the Law Lab and its

attorneys, Defendants have refused to provide any assurances that it will not proceed with

asylum interviews or deportations without providing detainees meaningful opportunities to speak

with counsel.  And despite the Law Lab's request, Defendants have failed to provide any

reasonable means for 123 detainees to consult with attorneys, including having failed to provide

PAGE 13 -  **COMPLAINT**

any mechanism for the immigrant detainees to make telephone calls, free of charge, to access attorneys and other necessary support.

63.    The limitations that Defendants have placed on in-person and telephone access for the immigrant detainees at Sheridan prison face are immense and functionally act to deny access. If more than 100 clients need access to a single visitation room, which is only available for 9 hours a week for multiple instances of representation, at different stages of each proceeding, there is simply no representation system that can permit an attorney to competently provide legal services and zealous representation.

64.    On information and belief, Defendants are likely to initiate asylum interviews as soon as next week.  Given the limited mechanisms that Defendants have offered for access to counsel, it is unlikely that any of the immigrant detainees in the Sheridan prison will be provide constitutionally adequate access before those interviews proceed.

65.    If the men detained at the Sheridan prison who are seeking asylum are not provided meaningful access to counsel, which includes, in addition to the know-your-rights presentations, an intake screening, an individualized client conference, one or more meetings as required by each client to prepare for fear interviews with ICE officials, and accompaniment to fear interviews, they will likely be unable to pursue meritorious claims for relief or identify defenses to which they are entitled.  As a result, they will face a real and imminent risk of deportation and, ultimately, physical harm, violence, or death.

**Immigrant Detainees Are Harmed By Denial of Access to Counsel**

66.    The government's denial of attorney access to the Sheridan prison therefore causes serious irreparable harm to the immigration detainees incarcerated there. Unlike in criminal proceedings, individuals in immigration proceedings are not generally entitled to

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

appointed counsel if they cannot afford one. *See generally CJLG v. Sessions*, 880 F.3d 1122, 1128 (9th Cir. 2018). Because attorneys are not automatically provided by the government, immigration detainees seeking representation must contact a private attorney to retain them or rely on a patchwork of legal service providers who provide "know your rights" trainings and, in some cases, pro bono representation. By denying attorney access, the federal government has effectively prevented detainees from retaining counsel or obtaining any legal assistance. In addition, the government's practices prevent retained counsel from consulting with their clients, preparing for hearings or simply communicating with clients about the status of their cases.

67.     The assistance of an attorney is essential for noncitizens navigating the notoriously complex immigration system. The immigration laws "have been termed second only to the Internal Revenue Code in complexity." *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987) (internal quotation marks omitted); *see also Baltazar-Alcazar v. INS*, 386 F.3d 940, 948 (9th Cir. 2004) (emphasizing the complexity of immigration laws and noting that lawyers may be the only ones capable of navigating through it).

68.     Legal assistance is particularly critical for noncitizens at the outset of their cases, who must make important decisions about what claims or defenses to pursue. For noncitizens seeking asylum, "credible fear" interviews may be conducted within days of apprehension. A denial of "credible fear" may result in the noncitizen's immediate deportation to the country where they believe they will be persecuted, tortured or killed. *See* 8 U.S.C. 1225(b)(1)(B)(iii). For such individuals, the assistance of counsel may mean the difference between life and death.

PAGE 15 -  **COMPLAINT**

## CLAIMS FOR RELIEF

### FIRST CLAIM
#### (Violation of the Administrative Procedure Act)

69.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

70.     The Detention Standards governing immigration detainees provide that "each facility shall permit legal visitation seven days a week, including holidays, for a minimum of eight hours per day on regular business days . . . and a minimum of four hours per day on weekends and holidays." ICE Performance-Based Detention Standards 2011 5.7.J.2.[4]

71.     Similarly, the Bureau of Prisons' standards governing inmates who are not serving a criminal sentence require attorney visits to be available all seven days of each week. "The Warden shall provide the opportunity for pretrial inmate-attorney visits on a seven-days-a-week basis. Attorney visits for pretrial inmates may be conducted at times other than established visiting hours with the approval of the Warden or designee." BOP Policy re Pretrial Detainees, 7331.04. *See also id.* at 5 (classifying ICE detainees as "pretrial" for purposes of the BOP regulations).

72.     An agency's unexplained failure to follow its own rules constitutes "arbitrary, capricious" conduct in violation of the Administrative Procedures Act. 5 U.S.C. 706(2)(A); *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).

73.     In addition, the agency's failure to comply with the attorney access requirements of the Constitution and 8 U.S.C. 1229a(b)(4)(A) is not "in accordance with law." 5 U.S.C. 706(2)(A).

---

[4] See https://www.ice.gov/detention-standards/2011

PAGE 16 - **COMPLAINT**

## SECOND CLAIM
### (Violation of the Immigration and Nationality Act)

74.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

75.     The Immigration and Nationality Act guarantees noncitizens in removal proceedings the right to counsel of their choosing at no expense to the government. 8 U.S.C. § 1229a(b)(4)(A); *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). This right necessarily entails the right to consult with an attorney in advance of any hearing. *Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir. 1985).

76.     Defendants' acts of preventing attorneys from meeting with their clients violates 8 U.S.C. 1229a(b)(4)(A).

## THIRD CLAIM
### (Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution)

77.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

78.     The Due Process Clause of the Fifth Amendment guarantees noncitizen detainees the right of access to the courts; the government may not unjustifiably obstruct that access. *See Procunier v. Martinez*, 416 U.S. 396 (1974); *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005).

79.     This protection includes rights related to retaining and communicating with attorneys: Detainees must be afforded "reasonable time to locate counsel," and counsel must be "permit[ted] . . . to prepare for the hearing." *Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir. 1985). Impediments to communication after transfer to a remote facility can constitute a

PAGE 17 **- COMPLAINT**

"constitutional deprivation" where they obstruct an "established on-going attorney-client relationship." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1439 (9th Cir. 1986).

80.     The Fifth Amendment further prohibits the government from barring an attorney from meeting an incarcerated client, even where the client is imprisoned merely for a few hours. *See generally Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (person subjected to custodial interrogation has the right to be represented by counsel); *Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998) (six-hour confinement "cannot be held too short, as a matter of law," to entitle a civil detainee the right to communicate).

81.     These protections apply to prisoners held under color of the immigration laws. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554, 565 (9th Cir. 1990) (recognizing "aliens have a due process right to obtain counsel of their choice at their own expense," and affirming injunction against government practices "the cumulative effect of which was to prevent aliens from contacting counsel and receiving any legal advice," including the practice of denying visits with counsel). *See also Lyon v. ICE*, 171 F. Supp. 3d 961 (N.D. Cal. 2016) (plaintiffs stated a claim and survived summary judgment on access to courts and related due process claim based on insufficient phone access to call attorneys); *cf. Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998) ("That a person is committed civilly . . . cannot diminish his right not to be held incommunicado.").

82.     Defendants' acts of preventing attorneys from representing their imprisoned clients violate the Fifth Amendment's Due Process Clause.

PAGE 18 - **COMPLAINT**

## FOURTH CLAIM
### (Violation of the First Amendment
### to the United States Constitution)

83.     All of the foregoing allegations are repeated and realleged as though fully set

forth herein.

84.     Prisoners and detainees have the "obvious" right, arising under both the First

Amendment and the Due Process Clause, not to be held incommunicado by the state. *Halvorsen*

*v. Baird*, 146 F.3d 680, 688–89 (9th Cir. 1998). The First Amendment guarantees prisoners and

detainees the right to communicate with the outside world. *Valdez v. Rosenbaum*, 302 F.3d 1039,

1048 (9th Cir. 2002). This protection encompasses the right to make telephone calls, exchange

correspondence, and receive in-person visitors. *See id; Strandberg v. City of Helena*, 791 F.2d

744, 747 (9th Cir. 1986). Detention facilities may not in effect deprive those who are

incarcerated of telephone access altogether. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir.

2000).

85.     The First Amendment protects the right to hire and consult with an attorney.

*Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (2005), *as amended on denial of*

*reh'g* (9th Cir. July 21, 2005). The state may not unreasonably restrict this right. *Id.* Similarly, it

protects an attorney's right to advise both retained clients and prospective litigants. *See NAACP*

*v. Button*, 371 U.S. 415, 428–429 (1963); *In re Primus*, 436 U.S. 412, 414, 423–24 (1978).

86.     By depriving the detained Plaintiffs of any means of communication with the

outside world, Defendants have violated and continue to violate the detained Plaintiffs' rights

under the First Amendment. And by denying the attorney Plaintiffs access to detainees who have

sought and would benefit from their counsel, Defendants infringe on Plaintiffs' First Amendment

rights.

PAGE 19 -  **COMPLAINT**

## PRAYER FOR RELIEF

Plaintiffs ask this Court to grant the following relief:

1.     Take jurisdiction over this complaint and petition for writ of habeas corpus;

2.     Declare that the actions and practices of Defendants described above constitute violations of federal regulatory, statutory, and constitutional law;

3.     Permanently enjoin Defendants and their directors, officers, agents, and employees from preventing attorneys from visiting or communicating with immigration detainees at Federal Correctional Institution, Sheridan, and from proceeding with their immigration cases or deporting them until they have been provided an adequate opportunity to individually consult with an attorney;

4.     Order Defendants to release Plaintiff Sanchez Gonzalez and others imprisoned with him at Federal Correctional Institution, Sheridan under color of the immigration laws unless Defendants provide adequate attorney access and permit the pro bono attorneys and any attorney meaningful and adequate access;

5.     Order Defendants to provide Plaintiffs with access to Federal Correctional Institution, Sheridan's four attorney visitation rooms for a minimum of six hours per day, including weekends, in order to perform group "know your rights" training and individualized interviews;

6.     Order Defendants to install four telephone lines per unit, with each line capable of placing free direct calls to legal service providers, including to Plaintiff Innovation Law Lab;

PAGE 20 - **COMPLAINT**

7.      Order Defendants to allow immigration detainees to access the telephones referred to in (6), above, during facility waking hours, or between 8 am and 8 pm, seven days a week;

8.      Order Defendants to provide written notice to Plaintiff Law Lab of any scheduled credible fear screenings or asylum interviews;

9.      Order Defendants to allow attorneys to use laptops in accordance with BOP security guidelines while performing legal services on behalf of any immigration detainee in Federal Correctional Institution, Sheridan.

10.     Grant an award of attorneys' fees and costs; and

11.     Grant such other relief as may be just and reasonable.

DATED this 22nd day of June, 2018.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Nadia H. Dahab
      **Keith Ketterling,** OSB No. 913368
      **Nadia H. Dahab,** OSB No. 125630

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Email:     kketterling@stollberne.com
           ndahab@stollberne.com

-and-

**Mathew W. dos Santos**, OSB No. 155766
**Kelly K. Simon**, OSB No. 154213
ACLU FOUNDATION OF OREGON, INC.
PO Box 40585
Portland, OR 97240
Telephone: (503) 227-3186
Email:     mdossantos@aclu-or.org
           ksimon@aclu-or.org

Attorneys for Plaintiffs-Petitioners

PAGE 21 -  **COMPLAINT**