JOSEPH H. HUNT
Assistant Attorney General
Civil Division
U.S. Department of Justice

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Ligation

ANTHONY D. BIANCO
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation

UBAID ul-HAQ
Trial Attorney
Fla. Bar No. 87397
District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4112
ubaid.ul-haq@usdoj.gov

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| INNOVATION LAW LAB and LUIS JAVIER SANCHEZ GONZALEZ by XOCHITL RAMOS VALENCIA as next friend, | Case No. 3:18-cv-01098-SI |
| Plaintiffs-Petitioners. | DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION AND FOR MOOTNESS |
| v. | |
| KIRSTJEN NIELSEN, Secretary, U.S. Department of Homeland Security, *et al.*, | |
| Defendants-Respondents. | |

INTRODUCTION

In this immigration case, Plaintiffs Innovation Law Lab ("Innovation") and Luis
Javier Sanchez Gonzalez ("Sanchez Gonzalez"), by Xochitl Ramos Valencia as next
friend (collectively, "Plaintiffs"), have alleged this Court's jurisdiction under 28 U.S.C.
§§ 1331, 1361, 1651, 2241, the Suspension Clause, U.S. Const. art. I, § 2, and the
Administrative Procedure Act ("APA") at 5 U.S.C. § 702, 706, as well as the Declaratory
Judgment Act, 28 U.S.C. §§ 2201, 2202. Complaint, ECF No. 1, at 4, ¶¶ 13-15.

However, the Immigration and Nationality Act ("INA") precludes all of these
provisions from providing this Court subject-matter jurisdiction over Plaintiffs'
Complaint. Currently, each alien detainee[1] represented by Innovation is in formal
removal proceedings, following the issuance and service of a Notice to Appear before an
immigration judge. Under these circumstances, the Ninth Circuit has unequivocally held
that right and access to counsel claims such as those raised by Plaintiffs may only be
raised in their removal proceedings, and not in district court. There is no jurisdictional
basis for the preliminary injunction, *see* Order Granting Preliminary Injunction ("PI
Order"), ECF No. 54; thus, it must be lifted, and this matter must be dismissed in its
entirety for lack of this Court's jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In addition,
Defendants have properly complied, and will continue to comply, in a way that addresses
the concerns Plaintiff raise in their Complaint, and as such, the matter should be
dismissed as moot.

---

[1] Including those that have been released from detention since the inception of this
matter.

PAGE 2 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

RELEVANT PROCEDURAL HISTORY

Plaintiffs filed their Complaint on June 22, 2018, generally alleging issues that precluded alien detainees at Federal Correctional Institution Sheridan ("FDC Sheridan") from receiving legal counsel. *See generally*, Complaint. Plaintiffs pleaded four claims for relief based on the alleged conduct of Defendants in limiting or denying the alien detainees' access to counsel: (1) a violation of the APA; (2) a violation of the INA; (3) a violation of the Due Process Clause of the Fifth Amendment; and (4) a violation of the First Amendment. Complaint at 16-19, ¶¶ 69-86.  Plaintiffs alleged that a "substantial number" of the alien detainees were likely apprehended at or near the border and seeking asylum protection and "other detainees" were likely apprehended in the interior of the United States and pending immigration court proceedings. *Id.* at 5, ¶¶ 20-21. Concurrently with their Complaint, Plaintiffs filed an application for a temporary restraining order ("TRO") requesting the Court order Defendants (1) to provide adequate attorney visitation and phone access for the alien detainees; (2) to permit Plaintiff Innovation to conduct "know your rights" trainings for the alien detainees; (3) to provide a minimum number of attorney visitation hours per day; and (4) to stay the alien detainees' immigration cases or removal until the alien detainees had an opportunity to consult with an attorney and attend the "know your rights" training. Application for TRO at 1, ECF No. 2.

The Court granted the TRO on June 25, 2018, concluding that Plaintiffs had shown a likelihood of success on the merits of their due process claim, as the Due Process Clause guarantees aliens a right to counsel in immigration hearings, including in

asylum proceedings.[2] June 25, 2018 Order at 14 ("TRO Order"), ECF No. 23. The Court also found that Plaintiffs had demonstrated they were likely to suffer immediate irreparable harm in the absence of emergency relief because by denying the alien detainees' access to counsel in the context of their asylum claims, Defendants were violating the alien detainees' constitutional rights. *Id.* at 15-16. As a result of the Court's findings in granting a TRO, the Court ordered Defendants not to proceed with any asylum interviews or hearings nor remove any alien detainee until after each alien detainee "has had a full and fair opportunity" to attend a "know your rights training" conducted by Innovation, and to consult with an attorney if he requested representation. *Id.* at 19-20. The Court also ordered Defendants to allow attorney access to the alien detainees with specific directives that Defendants establish procedures at FDC Sheridan for the alien detainees regarding visitation times, visitation rooms, interpreters, and telephone lines with direct access to legal service providers. *Id.* at 20.

On July 16, 2018, the Court extended by one week, to July 30, 2018, the TRO Order upon stipulation by the parties. July 16, 2018 Order, ECF No. 47. The stipulation was conditioned on Plaintiffs' agreement to complete all remaining initial consultations by July 30, 2018. *Id*.

Plaintiffs filed their motion for preliminary injunction on July 20, 2018, seeking a preliminary injunction limited to the issues of permitting attorneys from Innovation to deliver legal services to the detainees "on a day-to-day basis." Motion for Preliminary

---

[2] While the Court did not directly address whether the alien detainees at issue in this case were in expedited removal proceedings, the Court did find that formal removal proceedings had not commenced and thus Plaintiffs were not challenging their removal proceedings. TRO Order at 11.

Injunction ("PI Mot.") at 2, ECF No. 48. In their motion, Plaintiffs explicitly stated that they did not seek a further injunction preventing Defendants from initiating or continuing removal proceedings. *Id.* at 2-3.

On July 31, 2018, the Court granted Plaintiffs' Motion for Preliminary Injunction. *See* PI Order. The Court held that the jurisdictional bars of 8 U.S.C. §§ 1252(a)(2)(A) and (e) were inapplicable because of the stage of the immigration proceedings in which Innovation's clients found themselves. PI Order at 10. That is, at the time the Court issued the preliminary injunction:

> all but one of [Innovation's] clients has since completed a[] credible fear interview as provided under § 1225(b)(1)(B). Five of those detainee clients' credible fear determinations remain outstanding, but of the 74 determinations that have been made, every detainee client has received a positive credible fear determination. Thus, these 74 detainees are now permitted to pursue their asylum application under 8 U.S.C. § 1158 before an immigration, and, if removal proceedings are commenced, will be subject to formal, rather than expedited, removal proceedings under 8 U.S.C. § 1229a before an immigration judge.

PI Order at 9-10.

The Court similarly rejected that the claim-channeling provision at 8 U.S.C. § 1252(b)(9) and the provision regarding exclusive jurisdiction at 8 U.S.C. § 1252(g) operated to bar the Court from considering Plaintiffs' claim. PI Order at 10-12. Specifically, the Court ruled that "Plaintiffs do not challenge the detainees' removal proceedings because formal removal proceedings under 8 U.S.C. § 1229a have not yet commenced. Rather, Plaintiffs challenge ICE [Immigration and Customs Enforcement] and BOP [Bureau of Prisons] actions relating to the conditions of the civil immigrant detainees' pre-hearing confinement." PI Order at 11-12 (internal citation omitted). The Court rejected that *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), was binding on the matter because it "did not address whether district courts have jurisdiction over

PAGE 5 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

constitutional claims by immigrant detainees whose removal proceedings have not yet commenced." PI Order at 12.

Relying also on *Jennings v. Rodriguez*, this Court found that 8 U.S.C. § 1252(b)(9) "does not deprive a district court of jurisdiction to hear a challenge to an alien's indefinite detention, even when the purpose of the detention is to lead ultimately to removal proceedings . . . the mere fact that a noncitizen has been detained, even if that detention is an action taken to removal an alien, does not mean that § 1252(b)(9) presents a jurisdictional bar to all claims arising from circumstances of that detention." PI Order at 12-13 (internal quotation marks and citation omitted). The Court similarly rejected the applicability of 8 U.S.C. § 1252(g) because "Plaintiffs do not challenge" a decision to commence removal proceedings, adjudicate cases, or execute removal orders. PI Order at 13. This was primarily because "no removal proceeding has yet begun and no removal decision has yet been made." *Id*. The Court noted that there is a distinction between whether "*detention* is an action taken to remove an alien" and "whether the *legal questions* in this case arise from such an action." *Id*. (emphasis internal).

On September 4, 2018, this Court held a status hearing. During the hearing, counsel for Plaintiffs revealed that Innovation represents 81 aliens. As of September 4, 2018, 44 of Innovation's alien detainee clients remained in custody at FDC Sheridan – the other 37 (of the 81) had been released. On that date, Acting Field Office Director Chad Allen noted that were 58 total alien detainees at FDC Sheridan (37 of whom were Innovation's clients). *See* Exh. 1, Declaration of AFOD Allen ("Allen Decl.") at 2, ¶ 2.

Of those 58, all but one had been issued a Notice to Appear.[3] *Id.* All of Innovation's

clients were issued Notices to Appear. *Id.* Executive Assistant Amberly Newman

declares that there are 26 total alien detainees at FDC Sheridan as of today's date (18 of

which are Innovation clients). *See* Exh. 2, Declaration of Amberly Newman, September

14, 2018 ("Sept. Newman Decl.") at 1, ¶ 2.

## LEGAL STANDARD

A.  Fed. R. Civ. P. 12(b)(1)

Because federal courts have limited jurisdiction, a court must dismiss any case if

it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *Owen Equip.*

*& Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack

jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West,*

*Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.

1989). Moreover, when the issue of jurisdiction is separable from the merits of the case,

no presumption of truthfulness attaches to a plaintiff's allegations, and the plaintiff bears

the burden of proving that jurisdiction exists. *See Thornhill Publ'g Co. v. Gen. Tel.&*

*Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving

party asserts that the allegations contained in the complaint are insufficient on their face

to invoke federal jurisdiction. *Id.* In a factual attack, the moving party disputes the truth

of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.*

---

[3] One detainee withdrew his claim of fear and elected to proceed with his expedited
removal back to his home country. *See* Allen Decl. at 2, ¶ 3. This detainee does not appear
to be represented by Innovation.

The moving party may present affidavits or other evidence in support of its motion to dismiss. *Id*. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). Furthermore, when resolving a factual attack, a court need not assume the facts alleged in a complaint are true. *Id*.

B.  Fed. R. Civ. P. 12(h)(3)

Challenges to a federal court's subject-matter jurisdiction "may be raised by the parties at any time pursuant to [Rule] 12(h)(3)." *Augustine v. United States*, 704 F.2d 1074, 1075, n.3 (9th Cir. 1993). Indeed, a "court has an obligation to consider its jurisdiction at every stage of the proceedings." *Gros Ventre Tribe v. United States*, 469 F.3d 801, 815 (9th Cir. 2006). Like a motion under Rule 12(b)(1), a Rule 12(h)(3) challenge "can be either facial or factual." *White*, 227 F.3d at 1242. Generally, "the existence of disputed material facts will not preclude the trial court from evaluation for itself the merits of jurisdictional claims." *Thornhill Publ'g Co.*, 594 F.2d at 733. A "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077.

ARGUMENT

A.  The Court Lacks Jurisdiction Over Plaintiffs' Claims.

The INA makes clear that this Court does not have jurisdiction over Plaintiffs' claims for relief because it is undisputed that all alien detainees represented by

Innovation are now in formal removal proceedings before the immigration court. [4] *See*
Allen Decl. at 2, ¶ 2.

The INA mandates that "[j]udicial review of all questions of law and fact,
including interpretation and application of constitutional [] provisions, *arising from any*
action taken or *proceeding brought to remove* an alien from the United States . . . shall be
available only in judicial review of a final order under this section" and "no court shall
have jurisdiction . . . to review such an order or such questions of law or fact." 8 U.S.C.
§ 1252(b)(9) (emphasis added).

Although neither an immigration judge nor the Board of Immigration Appeals has
jurisdiction to hear questions involving the right and access to counsel, "the court of
appeals has authority to consider the issue because it falls within the narrow exception for
constitutional challenges that are not within the competence of administrative agencies to
decide and for arguments that are so entirely foreclosed . . . that no remedies [are]
available as of right from the agency." *J.E.F.M.*, 837 F.3d at 1038 (alterations in original,
citation omitted). This is true even if such claims were not raised in administrative
proceedings. *See id.*

Section 1252(b)(9) "consolidates all 'questions of law and fact ... arising from any
action taken or proceeding brought to remove an alien' into a petition for review."
*Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (citing to 8 U.S.C.

---

[4] A "Notice to Appear only initiates removal proceedings." *United States v. Albino*, 747
F.3d 1206, 1210 (9th Cir. 2014); *see* 8 U.S.C. §§ 1229(a)(1) (section titled "Initiation of
removal proceedings") ("In removal proceedings under [section 1229a], written notice (in
this section referred to as a 'notice to appear') shall be given in person to the alien
specifying" critical hearing information for the alien).

PAGE 9 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

§ 1252(b)(9)). Accordingly, "[t]aken together, § 1252(a)(5)[5] and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M.*, 837 F.3d at 1031 (emphasis internal).

Furthermore, 8 U.S.C. § 1252(g) strips this Court of jurisdiction to review any aliens' challenge to the executive branch's adjudication of removal proceedings. *See* 8 U.S.C. § 1252(g). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "The provision applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Critically, it is not the nature of the argument that

---

[5] Section 1252(a)(5) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

PAGE 10 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

controls, but rather, whether the challenge "arises from" the Attorney General's "decision or action" to take those three discrete actions. *Id.*

    1.   Plaintiffs' claims are not cognizable under the APA.

Plaintiffs make four claims of injury in this case. Their primary claim is that in failing to comply with their own attorney access standards, the agencies have failed to follow their "own rules . . . in violation of the" APA. Complaint at 16, ¶ 72 (citing 5 U.S.C. § 706(2)(A)). This, they contend is "arbitrary and capricious," and the agencies' "failure to comply with the attorney access requirements of the Constitution and" the INA is "not in accordance with law[.]" *Id.* at ¶ 73 (quotation marks omitted). Plaintiffs' APA claim fails because there is an adequate remedy available to address this claim and it is not through the federal courts.

The APA is merely the default provision for agency review. *See* 5 U.S.C. § 704 (limiting APA review to agency actions "for which there is no other adequate remedy"). If a "special statutory review proceeding relevant to the subject matter" exists, then that is "[t]he form of proceeding for judicial review." 5 U.S.C. § 703. Moreover, a court may not review an agency action where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see Heckler v. Chaney*, 470 U.S. 821, 828, (1985) (noting that litigants must "clear the hurdle § 701(a)" "before any review at all may be had"). These provisions make "clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Mass.*, 487 U.S. 879, 903 (1988); *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[The APA's waiver of sovereign immunity provision] prevents plaintiffs from exploiting the APA's waiver to evade limitations on

suit contained in other statutes.").

Plaintiffs' access and right to counsel claims are not cognizable under the APA. A "statute[] preclude[s] judicial review" such that the APA is an unavailable pathway to federal court for Plaintiffs' claim. 5 U.S.C. § 701(a)(1); 8 U.S.C. §§ 1252(b)(9), (g); *see J.E.F.M.*, 837 F.3d at 1032-33 ("'An alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned.'") (quoting *Aguilar v. ICE*, 510 F.3d 1, 13 (1st Cir. 2007)) (internal alterations omitted).

While Plaintiffs may couch their APA and other claims as the agencies' alleged failure to comply with attorney access requirements and failure to provide access to counsel, the "right" to counsel and "access" to counsel present substantially similar questions. That is, both aliens whose "right to counsel," and aliens whose "access to counsel," have been infringed are unable to meaningfully consult with an attorney. Moreover, "[t]here is no exception to the § 1252(b)(9) for unprecedented, extraordinary, or less impactful circumstances, but instead one for 'claims that are independent of or collateral to the removal process.'" *Alvarez v. Sessions*, No. 18-cv-5208, 2018 WL 4181956, at *4 (N.D. Cal. Aug. 31, 2018) (quoting *J.E.F.M.*, 837 F.3d at 1032)). Plaintiffs' right and access to counsel claims now arise squarely within the context of removal proceedings, because "at a minimum, [an immigration judge] must inquire whether [an alien] wishes counsel, determine a reasonable period for obtaining counsel, and assess whether any waiver of counsel is knowing or voluntary." *J.E.F.M.*, 837 F.3d at 1033 (internal quotation marks and citation omitted). "Failure to inquire into whether [an alien] wants (or can knowingly waive counsel is grounds for reversal." *Id*. Plaintiffs'

claims are now neither independent nor collateral to the removal process – they directly

implicate it. This Court therefore lacks jurisdiction to review any claims of the APA

regarding attorney access. 5 U.S.C. § 701(a)(1); 8 U.S.C. §§ 1252(b)(9); (g).[6]

    2.  Plaintiffs' INA and constitutional claims are now barred in district court.

For the same reasons that this Court lacks jurisdiction to review this matter under

the APA, Plaintiffs' claims related to right to counsel under the INA, *see* Complaint at

17, ¶ 75, right and access to counsel under the Fifth Amendment's Due Process Clause,

*see id*. at 17-18, ¶¶ 78-82, and right to communicate with counsel under the First

Amendment, *see id*. at 19, ¶¶ 83-86, are now jurisdictionally barred. All of Innovations'

clients are in removal proceedings under 8 U.S.C. § 1229a. *See* Allen Decl. at 2, ¶ 2.

They must therefore seek review of any alleged injuries through the petition for review

process. 8 U.S.C. § 1252(b)(9).

"Right-to-counsel claims are routinely raised in petitions for review filed with a

federal court of appeals." *J.E.F.M.*, 837 F.3d at 1033. And "[t]he legislative history of the

INA, as well as amendments to § 1252(b)(9), confirm that Congress intended to channel

all claims arising from removal proceedings, including right-to-counsel claims, to the

federal courts of appeals and bypass the district courts." *J.E.F.M.*, 837 F.3d at 1033. This

---

[6] Without the APA, which provides the cause of action "hook" necessary to invoke the Declaratory Judgment Act ("DJA"), as Plaintiffs appear to have done here, *see* Complaint at 4, ¶ 13, the DJA does not confer subject-matter jurisdiction. *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005) (holding that the DJA "does not by itself confer federal subject-matter jurisdiction" and therefore a plaintiff must "plead an independent basis for federal jurisdiction."). Similarly, 8 U.S.C. § 1252(b)(9) specifically precludes review of "any action taken or proceeding brought to remove an alien from the United States" under 28 U.S.C. §§ 1361 and 1651. Plaintiffs cannot invoke the Court's jurisdictions under those sections here. *See* Complaint at 4, ¶ 13 (citing 28 U.S.C. §§ 1361 and 1651).

necessarily includes "policies-and-practices challenges" such as "right-to-counsel claims" of the nature that Plaintiffs raise in this case. *Id*. at 1035.

Any "distinctions between the minors' claims in *J.E.F.M*." and Plaintiffs claims here related to a "disruption to an established representation relationship rather than a denial of representation . . . are facts of no moment." *Alvarez*, 2018 WL 4181956, at *4. Plaintiffs raise a right to counsel claim under the INA which is now wholly governed by *J.E.F.M*. and the directive to channel all of such access to counsel claims through the petition for review process. *J.E.F.M.*, 837 F.3d at 1033. Plaintiffs' access to counsel claims are ultimately a distinction without a difference, and must similarly be dismissed. This is because "the right placed at issue by the [Complaint] filed in this case still arises under the Fifth Amendment, as did the minors' right in *J.E.F.M.*, and is unquestionably 'bound up in and an inextricable part of the administrative process.'" *Alvarez*, 2018 WL 4181956, at *4 (quoting *J.E.F.M.*, 837 F.3d at 1033).

Indeed, this Court has indicated on multiple occasions that the initiation of formal removal proceedings would bar this Court from reviewing Plaintiffs' claims. *See* PI Order at 9-10 ("these 74 detainees are now permitted to pursue their asylum application . . . before an immigration and, if removal proceedings are commenced, will be subject to formal . . . removal proceedings under 8 U.S.C. § 1229a"); 11 ("Plaintiffs do not challenge the detainees' removal proceedings because formal removal proceedings under 8 U.S.C. § 1229a have not yet commenced"); 12 ("*J.E.F.M.* did not address whether the district courts have jurisdiction over constitutional claims by immigrant detainees whose removal proceedings have not yet commenced."); *id*. ("*J.E.F.M.*, therefore, does not preclude this Court from hearing claims from civil immigrant detainees whose removal

proceedings have not yet been initiated"); 13 ("Plaintiffs do not challenge any . . . decision or action [under 8 U.S.C. § 1252(g)]. Indeed, they cannot, as no removal proceeding has yet begun and no removal decision has yet been made.").[7]

As such, Plaintiff Sanchez Gonzalez and those individuals similarly situated must raise their INA-based and constitutional right and access to counsel claims in a petition for review of any final removal order – if one were to issue – filed with the appropriate court of appeals. *See* 8 U.S.C. § 1252(b)(9) (the "interpretation and application of *constitutional* and statutory provisions, arising from any action taken or *proceedings brought to remove an alien* . . . shall be available only in judicial review of a final order").

    B.  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), Does Not Provide Jurisdiction to Review the Complaint or Overcome 8 U.S.C. §§ 1252(b)(9) or (g).

In its order granting preliminary injunction, this Court relied heavily on *Jennings*, 138 S. Ct. 830, to conclude that "8 U.S.C. § 1252(b)(9) does not deprive a district court of jurisdiction to hear a challenge to an alien's indefinite detention, even when the purpose of detention is to lead ultimately to removal proceedings." PI Order at 12.

As an initial matter, the Plaintiffs have neither raised a claim related to habeas or the fact of their detention, nor have they alleged that their detention has been prolonged.[8]

---

[7] *See also* TRO Order at 11 ("Plaintiffs in the pending case, however, do not challenge the detainees' removal proceedings because formal removal proceedings have not commenced."); *id.* ("*J.E.F.M.*, therefore, does not preclude this Court from hearing claims from civil immigrant detainees whose removal proceedings have not yet been initiated"); 12 ("The plain text of 8 U.S.C. § 1252(b)(9), 8 U.S.C. § 1252(a)(5), and the Ninth Circuit's holding in *J.E.F.M.* explicitly limits the mandatory PFR process to claims arising from removal proceedings.").

[8] While they invoke jurisdiction under 28 U.S.C. § 2241, they fail to state a claim cognizable under that section. *See* Complaint at 4, ¶ 13. Accordingly, there is no habeas cause of action to which Defendant must (or could) respond.

PAGE 15 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

*See* Complaint at 16-19. Indeed, the majority of Innovations' clients have been released, or are eligible for release. Sept. Newman Decl. at 1, ¶ 2 (indicating only 26 alien detainees are currently housed at FDC Sheridan, 18 of which are Innovations' clients). *Jennings* is therefore inapposite because it does not discuss any claims of the type raised here in the context of removal proceedings under 8 U.S.C. § 1229a, a procedural posture in which all of Innovations' clients find themselves. Even if Plaintiffs had presented a habeas claim, regardless, the right and access to counsel questions would remain subject to the claim channeling provision's jurisdictional bar for district courts. *See* 8 U.S.C. § 1252(b)(9) ("no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United State Code, … to review an order or such question of law or fact").

Moreover, while the Supreme Court ultimately "declined to interpret the phrase 'arising from removal proceedings' in an 'extreme way' that would make certain circumstances of pre-hearing detention 'effective[ly] unreviewable[,]" PI Order at 12, the Court here "need not employ an expansive interpretation of § 1252(b)(9)'s 'arising from' language to find that right-to-counsel claims, like those of [Plaintiffs], fall squarely within the purview of provision." *Alvarez*, 2018 WL 4181956, at *5. The absurdity that the Court wished to avoid in its PI Order is not implicated where Plaintiffs' claims can appropriately be raised in the petition for review process. There is no plausible scenario by which Plaintiffs' claims would be effectively unreviewable as the Supreme Court contemplated in *Jennings*. As the Ninth Circuit has explained, claims of denied access to counsel are properly of the sort that can and must be raised within the administrative review process under section 1252(b)(9). *See J.E.F.M.*, 837 F.3d at 1033-37; *see also Alvarez*, 2018 WL 4181956, at *5.

PAGE 16 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

C.  Plaintiffs' Claims Are Moot And The Voluntary Cessation Doctrine Is Inapplicable.

Plaintiffs' claims in their Complaint have been satisfied and are moot. Plaintiffs demand, *inter alia*, that Defendants "provide Plaintiffs with access to [FDC Sheridan's] four attorney visitation rooms for a minimum of six hours per day, including weekends, in order to perform group 'know your rights' training and individualized interviews; . . . install four telephone lines per unit, with each line capable of placing free direct calls to legal service providers, including Plaintiff Innovation Law Lab; . . . allow immigration detainees to access the telephones . . . during facility waking hours, or between 8 am and 8 pm, seven days a week; . . . provide written notice to Plaintiff Law Lab of any scheduled credible fear screenings or asylum interviews; . . . allow attorneys to use laptops in accordance with BOP security guidelines while performing legal services on behalf of any immigration detainee" at FDC Sheridan. Complaint at 20-21, ¶¶ 5-9.

It is undisputed that the facility-based requests have all been satisfied, and all the credible fear interviews have concluded, resulting in Notices to Appear for all Innovation's clients. *See* June 24, 2018 Declaration of Amberly Newman, ECF No. 14-1; July 1, 2018 Declaration of Amberly Newman ("July Newman Decl."), ECF No. 29-1; Declaration of Rosa Cham-Estrada ("Cham-Estrada Decl."), ECF No. 42; Allen Decl. at 2, ¶ 2. Moreover, as of the last status hearing on September 4, 2018, Plaintiffs raised no allegations that Defendants were "preventing attorneys from visiting or communicating with immigration detainees at" FDC Sheridan, or that Defendants were failing to allow "adequate attorney access" or to "permit the pro bono attorneys and any attorney meaningful and adequate access[.]" Complaint at 20, ¶¶ 3, 4; *see* Sept. Newman Decl. at 3-4, ¶ 3 (noting no further complaints have been communicated to BOP since September

4, 2018). Defendants' post-Complaint conduct has cured Plaintiffs' alleged injuries, and thus their claims are moot.

Critically, the "voluntary cessation" exception to mootness is overcome here. This Court has previously held that Defendants' "informal policy changes" related to Plaintiffs' alleged injuries did not "meet the stringent standards of the voluntary cessation doctrine need[ed] to moot Plaintiffs' claims." TRO Order at 18. Similarly, in its PI Order, the Court concluded that "Plaintiffs have presented substantial evidence that immigrant detainees at FDC Sheridan are not able to make free calls to legal service providers and have been denied access to know-your-rights trainings . . . [and] legal visitation . . . [is] far more restricted . . . than both BOP and ICE standards require." PI Order at 17. In addition, the Court credited the timing of Defendants' stated changes in their visitation hours, and noted that there had been "insufficient time to provide attorney access that satisfies the requirements of due process[,]" notwithstanding "Defendant's stated efforts to improve their policies and practice[.]" TRO Order at 18.

The rationale in the TRO and PI Orders applying the voluntary cessation exception to mootness no longer exist. First, since June 25, 2018, BOP has established formalized policies and procedures related to visitation and telephone access, and these have not changed. Indeed, Associate Warden Rosa Cham-Estrada emphasized BOP's commitment to continue the current legal visitation schedule. *See* Cham-Estrada Decl. at 4, ¶ 9 ("Although we are willing to keep our 7 days/week legal visitation schedule for the duration we are to house ICE detainees, we are hopeful we can eliminate or largely reduce the use of evening sessions because they require additional staffing."). Pursuant to

PAGE 18 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

this visitation schedule, Innovation appears to have completed the majority, if not all, of the know-your-rights trainings as of July 20, 2018. *See* PI Mot. at 9.

Additionally, the phone lines, including dedicated phone lines for calling pro bono counsel have been in place since July 11, 2018, and BOP has no intention of removing these lines. *See* Cham-Estrada Decl. at 2, ¶ 3. It bears noting that although the Court ordered that Defendants "make available to Law Lab's client detainees at least two telephone lines in each unit where immigrant detainees are held[,]" PI Order at 22, Defendants have voluntarily left the four phone lines in place that were installed prior to the PI Order, evidencing Defendants' good-faith willingess to maintain this as the new status quo for as long as there are alien detainees housed at FDC Sheridan. *See* July Newman Decl. at 3, ¶ 4. And too, the laptop policy implemented on June 26, 2018, is a long-term strategy that BOP intended to adopt notwithstanding the instant matter. *See* July Newman Decl. at 4, ¶ 6; FDC Sheridan Computer Laptop, Tablet, and External Memory Devices Agreement, ECF No. 32-1, at 8.

Second, the Court's other concern has been that the alien detainees would "begin their asylum proceedings with constitutionally inadequate access to their attorneys." TRO Order at 18; *see* PI Order at 19 ("The denial of access to legal assistance is likely to lead to the denial of asylum and ultimately to the deportation of detainees with meritorious asylum claims."). This is no longer a concern. For purposes of the preliminary injunction, Plaintiffs withdrew their request to halt the removal process. *See* PI Order at 9, ¶ 10. It is Defendants' implemented policies and procedures[9] responding to Plaintiffs' allegations that have allowed Plaintiffs to "continue to deliver legal services to its client detainees at

---

[9] Both prior, and in response to, the Court's TRO Order.

FDC Sheridan[,]" such that Plaintiffs' interest is to now to have their removal process continue to resolution. *Id.*

Equally important is that each of Innovation's clients has received a Notice to Appear, which is the most favorable initial outcome an alien can hope to achieve after first being processed for expedited removal. Allen Decl. at 2, ¶ 2; *see* 8 C.F.R. § 235.6(a)(1)(ii) (requiring an immigration officer to refer an alien in expedited removal proceedings to an immigration judge via a Notice to Appear where the alien has demonstrated a credible fear of persecution or torture). This substantially mitigates the concerns of "the improper denial of [the alien detainees'] meritorious asylum applications." PI Order at 21. Instead, each of Innovation's clients has enjoyed the benefit of adequate access to counsel, and is on his way to filing a formal application for asylum in removal proceedings.

The Ninth Circuit's test for the voluntary cessation mootness exception is articulated in *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014).

> [W]e have indicated that mootness is more likely if (1) the policy change is evidenced by language that is "broad in scope and unequivocal in tone," (2) the policy change fully "addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case"; (3) "th[e] case [in question] was the catalyst for the agency's adoption of the new policy,"; (4) the policy has been in place for a long time when we consider mootness, and (5) "since [the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[.] On the other hand, we are less inclined to find mootness where the "new policy ... could be easily abandoned or altered in the future." Ultimately, the question remains whether the party asserting mootness "has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur." (internal citations omitted).

All the listed factors militate towards finding that Defendants have met the heavy burden of proving that the "challenged conduct cannot reasonably be expected to recur." *Id.* The policy changes related to visitation hours, visitation rooms, telephone, and laptop access shall endure for the alien detainees and address the access and right to counsel claims that

PAGE 20 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiffs raise. Indeed, Defendants have even installed physical infrastructure in the form of telephone lines to satisfy Plaintiffs' particular demands. Those lines will remain in place so long as there are alien detainees housed at FDC Sheridan. These policy and physical changes were adopted in light of both Plaintiffs' Complaints and the TRO Order. Plaintiffs have not alleged that Defendants have repeated the conduct that led to the Complaint, nor is it likely that they could in light of the accommodations that Defendants have provided in good faith. *See* PI Order at 8, ¶ 8 (noting the parties' general "good faith efforts to comply with the TRO"); Transcript of TRO Hearing, June 25, 2018 at 60 ("I accept the government's representation that they are trying to do the right thing. But this brings me back to the principle of trust, but verify. So I do trust the government. But part of their representation is that these things will happen. And since we know they haven't yet happened, under the Doctrine of Voluntary Cessation, the plaintiffs' claims are not moot.").

The sole *Rosebrock* factor that appears to weigh against Defendants is that the policy changes that are now benefitting Plaintiffs have only been in place for approximately three months, and not three years. However, actual time should not be the only metric that governs whether the policy changes have been effective or are capable of repetition. Rather, when considering the number of attorney-client visitations that Defendants' policies have facilitated, the hours of time that Defendants have opened up for such visitations, the number of phone calls made, and ultimately, the number of Innovations' clients that received positive credible fear determinations (all of them), Notices to Appear (all of them), and release from FDC Sheridan (more half of them as of today's date) – by this measure, Plaintiffs claims related to access and right to counsel

have been resolved in a way that is wholly favorable to Innovation and its remaining

alien detainee clients. Accordingly, Defendants' subsequent actions following Plaintiffs'

Complaint should not implicate the voluntary cessation exception to what is otherwise a

moot case.

CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its

entirety for lack of subject-matter jurisdiction and as moot.

Dated: September 14, 2018                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
District Court Section
Office of Immigration Litigation

ANTHONY D. BIANCO
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-8014
Facsimile: (202) 305-7000
E-mail: anthony.d.bianco@usdoj.gov

/s Ubaid ul-Haq
UBAID ul-HAQ
Trial Attorney
Fla. Bar No. 87397
District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4112

PAGE 22 – DEFENDANTS' MOTION TO DISMISS COMPLAINT

Facsimile: (202) 305-7000
Email: ubaid.ul-haq@usdoj.gov

*Attorneys for Defendants*